Barrett, Circuit Judge.
 

 Alvarenga seeks asylum, withholding of removal, and relief under the Convention Against Torture because he fears torture
 and persecution from gang members if he returns to El Salvador. The immigration judge concluded that Alvarenga lacked credibility and denied him relief. Finding no clear error in the immigration judge's decision, the Board of Immigration Appeals dismissed the appeal. Substantial evidence supports the decisions of the immigration judge and the Board, and the record does not compel a contrary conclusion. We therefore deny Alvarenga's petition for review.
 

 I.
 

 Gerson Eliseo Alvarenga-Flores was apprehended crossing the United States border, and he gave a "credible fear" interview while he was detained.
 
 [1]
 
 He said that he was afraid to return to El Salvador, where he is a citizen, because after witnessing the murder of a friend, he received threats from the gang members responsible. His case was referred to an immigration judge (IJ), and the Department of Homeland Security filed a Notice to Appear. It charged him with removability under the Immigration and Naturalization Act because he did not possess valid non-immigrant visas, travel documents, or immigrant visas, and he was not exempt from possessing those documents. § 212(a)(7)(A)(i)(I),
 
 8 U.S.C. § 1182
 
 (a)(7)(A)(i)(I). Alvarenga conceded that he was removable and applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). The IJ denied all three forms of relief based on an adverse credibility finding; he also found that Alvarenga's asylum application was time-barred.
 

 He based the adverse credibility finding on inconsistencies in Alvarenga's testimony about the two events that had prompted him to leave El Salvador for fear of persecution. One involved his escape from gang members who attacked him in a taxi; the other involved his escape from gang members who approached him on a bus.
 

 First, the taxi: Alvarenga claimed that he and three friends were riding in a taxi that was stopped by a gang, which fired shots at the car and ultimately killed one person. He offered two different accounts of what happened. In his written statement, Alvarenga said that his friend Jose Diaz was sitting in the front passenger seat. After the attack began, Diaz exited his door and fled on foot, which distracted the gunmen and allowed the taxi to get away. In his oral testimony before the IJ, Alvarenga described events differently. He testified that no one was seated in the front-in this version, all four passengers were seated in the back. He said that Diaz, the friend who fled on foot, was sitting in the middle seat. Because everyone else stayed in the taxi, this position would have required Diaz to climb over one or more passengers to exit the car. When asked about the inconsistency in his stories, Alvarenga had no explanation for it.
 

 Next, the bus: Alvarenga claimed that a few days after the taxi incident, gang members boarded a bus that he was riding home from school. In his written statement, Alvarenga said that the gang members-one of whom he recognized as an assailant from the taxi attack-boarded the back of the bus and initially stayed there. When the gang members started approaching Alvarenga, he jumped out of the bus door, and in the process, fell and scraped his hand. In the oral version that he gave to the IJ, events unfolded differently. He testified that he boarded the back of the bus and the gang members got on through the front. When the assailants walked toward him, he jumped out of the back. When pressed by both the IJ and
 the government about the difference in his oral account, Alvarenga "testified forcefully that he got on the back of the bus and not the assailants." Again, he did not explain the discrepancy between his written and oral statements.
 

 Because of the inconsistencies, the IJ determined that Alvarenga was not being truthful about the basis of his applications for asylum, withholding of removal, and protection under CAT. He then considered whether corroborating evidence could rehabilitate Alvarenga's testimony. Alvarenga had submitted two affidavit letters from his parents to support his story. Both letters were written in English, even though neither parent speaks English. The IJ also found the substance of the letters questionable. Alvarenga's parents lacked firsthand knowledge of the events discussed in their letters and "re-state[d] things that they can only have heard from [Alvarenga]." The IJ further noted that Alvarenga's parents could have testified telephonically but did not. He concluded that the letters were entitled to no weight.
 

 On appeal to the Board, Alvarenga argued that the inconsistencies were neither material nor related to the heart of his claim. But the Board, like the IJ, found the discrepancies sufficient to sustain an adverse credibility finding. 8 U.S.C. § 1229a(c)(4)(C) (an IJ may make a credibility determination "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim"). The Board also agreed that Alvarenga's asylum claim was statutorily barred.
 

 In his petition for review, Alvarenga argues that the IJ and the Board erred in denying asylum, withholding of removal, and protection under CAT based on a finding of adverse credibility.
 
 [2]
 

 II.
 

 When the Board adopts and supplements an IJ's decision, we review the IJ's decision along with the additional reasoning provided by the Board.
 
 Ndonyi v. Mukasey
 
 ,
 
 541 F.3d 702
 
 , 709 (7th Cir. 2008). We consider the decisions "under the deferential substantial evidence standard, meaning that we may only reverse their factual findings if the facts
 
 compel
 
 an opposite conclusion."
 
 Tian v. Holder
 
 ,
 
 745 F.3d 822
 
 , 828 (7th Cir. 2014). We also afford significant deference to an agency's adverse credibility determination.
 
 Song Wang v. Keisler
 
 ,
 
 505 F.3d 615
 
 , 620 (7th Cir. 2007) (noting that credibility determinations are only overturned under extraordinary circumstances).
 

 We turn first to asylum. An applicant applying for asylum as a refugee must
 
 credibly
 
 establish a well-founded fear of persecution upon return to his home country.
 
 8 U.S.C. § 1101
 
 (a)(42)(A) ;
 
 Ahmad v. I.N.S.
 
 ,
 
 163 F.3d 457
 
 , 460 (7th Cir. 1999). Asylum cases thus "often turn on the IJ's credibility determination; an adverse credibility finding will doom the applicant's claimed eligibility."
 
 Musollari v. Mukasey
 
 ,
 
 545 F.3d 505
 
 , 508-09 (7th Cir. 2008). This credibility determination assesses the claim for consistency, detail, and the inherent plausibility of the applicant's account.
 
 8 U.S.C. § 1158
 
 (b)(1)(B)(iii) ;
 
 see
 

 Capric v. Ashcroft
 
 ,
 
 355 F.3d 1075
 
 , 1085 (7th Cir. 2004). And in cases like Alvarenga's, which are "governed by the REAL ID Act, the IJ's authority is even greater. ... [IJs] 'can base an adverse credibility finding on any inconsistency, whether it goes to the
 heart of the applicant's claim or not.' "
 
 Tawuo v. Lynch
 
 ,
 
 799 F.3d 725
 
 , 728-29 (7th Cir. 2015) (quoting
 
 Georgieva v. Holder
 
 ,
 
 751 F.3d 514
 
 , 519 (7th Cir. 2014) );
 
 see
 
 § 1158(b)(1)(B)(iii).
 

 The IJ's adverse credibility finding here centered on the inconsistencies in Alvarenga's written and oral statements about the taxi and bus incidents. These two encounters with gang members were crucial to Alvarenga's claim that gang members were likely to torture him if he returned to El Salvador, yet he could not keep the facts straight with respect to either one. Alvarenga offers several explanations for the differences: he does not speak English, his statement was prepared telephonically while he was detained, and he was sent only an English copy to sign.
 

 But the IJ considered and rejected these arguments. He stated that he did not "for a second, believe that [the discrepancies were] based on [a] difficulty in communication." In fact-as the IJ and Board noted-when confronted with his discrepancies, Alvarenga had no explanation. And when offered the chance to corroborate his testimony, he provided more dubious evidence: letters in English from his non-English-speaking parents.
 
 See
 

 Georgieva
 
 ,
 
 751 F.3d at 519
 
 (stating that if the IJ finds an applicant's story incredible, the applicant must provide corroborating evidence and explain the discrepancies).
 

 Under our deferential standard of review, "[w]e need only assure ourselves that the IJ, and ultimately the Board, provided specific reasons based in the evidence for their credibility determinations."
 
 Tawuo
 
 ,
 
 799 F.3d at 728-29
 
 . They did so here. The evidence shows that Alvarenga provided conflicting accounts about what happened during the taxi and bus incidents.
 
 [3]
 
 He also failed to offer convincing corroborating evidence or explain the discrepancies. We thus conclude that substantial evidence supports the IJ's and Board's decisions.
 
 [4]
 

 III.
 

 Because the burden for securing asylum is lower than the burden for securing either withholding of removal or relief under CAT,
 
 see
 

 Capric
 
 ,
 
 355 F.3d at
 
 1095 ;
 
 Dandan v. Ashcroft
 
 ,
 
 339 F.3d 567
 
 , 575 n.7 (7th Cir. 2003), Alvarenga's remaining two claims must also fail,
 
 see
 

 Musollari
 
 ,
 
 545 F.3d at
 
 508 n.2. Accordingly, we DENY the petition for review.
 

 Petitioner moved to redact his name from our opinion. Redaction is an extraordinary measure, and petitioner has not shown that it is warranted here.
 

 Alvarenga also argues that his due process rights were violated because he did not receive a fair hearing. But the record shows he was permitted a reasonable opportunity to present his case, and so we find this argument without merit.
 
 See
 

 Ambati v. Reno
 
 ,
 
 233 F.3d 1054
 
 , 1061-62 (7th Cir. 2000).
 

 The dissent acknowledges the discrepancies in Alvarenga's story but finds his account more plausible than the IJ did. That, however, is not enough. "We will not overturn adverse credibility determinations simply because the evidence might support an alternate finding."
 
 Kllokoqi v. Gonzales
 
 ,
 
 439 F.3d 336
 
 , 341 (7th Cir. 2005). The IJ's adverse credibility determination here was supported by the record, and we do not find the "extraordinary circumstances" necessary to overturn that finding.
 
 Krishnapillai v. Holder
 
 ,
 
 563 F.3d 606
 
 , 617 (7th Cir. 2009).
 

 Alvarenga's asylum claim also fails because it is time-barred. A person must apply for asylum within one year of his or her arrival in the United States.
 
 8 U.S.C. § 1158
 
 (a)(2)(B). Alvarenga filed for asylum three and a half years after being detained and failed to show changed or extraordinary circumstances.
 
 8 U.S.C. § 1158
 
 (a)(2)(D).